UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AVERY WEST, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 4:10-CV-2127 (CEJ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM**

This matter is before the court on the motion of Avery West to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. The United States has filed a response in opposition.

**I. Background**

West was charged in an indictment with conspiracy to distribute and possess with intent to distribute cocaine base and in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count I); possession with intent to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count II); possession with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count III); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(Count IV). On July 30, 2008, a jury found West guilty on all counts.[1] He was sentenced to concurrent terms of imprisonment of 400 months on each of Counts I, II and III and 240 months on Count IV.

---

[1] A co-defendant, Kimberly West was found not guilty. The other defendants pled guilty prior to trial.

On appeal, West challenged the district court's denial of his motions to suppress evidence seized during a search of his home and wiretap evidence. The judgment was affirmed. United States v. West, 589 F.3d 936 (8th Cir. 2009).

After his petition for a writ of certiorari was denied, West filed the instant motion to vacate. The United States has filed a response in opposition.

II. Discussion

West asserts two grounds for relief in his motion: (1) denial of effective assistance of counsel at trial and (2) denial of effective assistance of counsel on appeal.

West was initially represented by retained counsel, Joel Schwartz, who filed motions to suppress evidence seized pursuant to a search warrant and to suppress evidence obtained through wiretaps. Before the evidentiary hearing, Mr. Schwartz was removed from the case due to a potential conflict of interest. Thereafter, West was represented by attorney Paul D'Agrosa who was appointed by the court. Mr. D'Agrosa met with Mr. Schwartz, discussed the issues involved in the case, including potential motions and witnesses, and obtained the file that Mr. Schwartz had compiled.

Mr. D'Agrosa proceeded to review the file and the discovery material, including the wiretap documents, and met with an investigator. Mr. D'Agrosa then met with West to discuss strategy and prepare for an upcoming suppression hearing. Mr. D'Agrosa continued to represent West in the pretrial, trial, and appellate proceedings.

To prevail on a claim of ineffective assistance of counsel, a movant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that

counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In Strickland, the Court described the standard for determining an ineffective assistance claim:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. in making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 466 U.S. at 690. To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The failure to show prejudice is dispositive, and a court need not address the reasonableness of counsel's performance in the absence of prejudice. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

### A. Ground One: Ineffective Assistance at Trial

**(1) Failure to conduct adequate investigation and prepare for pretrial motions and trial**

### (a) Witnesses

The charges against West were based in part on the seizure of cocaine and cocaine base from his home during the execution of a search warrant on October 26, 2005. Before trial, the court conducted an evidentiary hearing on West's motion to suppress the seized evidence. West states that he asked his attorney to canvass his neighborhood and interview people who may have witnessed the events that took place at his home on the day of the search. He also states that he gave his attorney the names of the individuals who were present at his home on October 26 when the police executed a search warrant. West claims that he was denied effective assistance of counsel due to his attorney's failure to interview these individuals and call them to testify at the suppression hearing.

In his affidavit, Mr. D'Agrosa states that he reviewed the report of the investigator retained by Mr. Schwartz, which "detailed a neighborhood canvas and witness interviews." [Doc. # 12-3]. West makes no showing of additional witnesses or evidence that would have resulted from a second canvas of the neighborhood, nor does he otherwise demonstrate that he was prejudiced by Mr. D'Agrosa's failure to repeat the work that had already been done.

The court's record reveals that defense counsel called four witnesses to testify at the suppression hearing, three of whom claimed to be present in or outside West's home at the time of the search. West has submitted the affidavits of Tramaine Ellis, Adrian West, William Thomas, and Reggie Brown, additional witnesses whom he claims Mr. D'Agrosa should have interviewed and called to testify at the suppression hearing and at trial. Based on the content of these affidavits, it is clear that West cannot

establish that counsel's omission of these witnesses fell below the standard of reasonable professional judgment.

In his one-sentence affidavit, Ellis states that he did not "give or receive anything from Avery West or Avery West's residence on the date of October 26, 2005." [Doc. # 1-2, p. 5]. For his part, Thomas merely states in his affidavit that he and West were never involved in a drug conspiracy. [Doc. # 1-2, p. 7]. West has not shown how the presentation of these self-serving statements would have led to a different outcome in this case. He also makes no showing that Ellis and Thomas were available to testify and would have waived their Fifth Amendment right against self-incrimination if they had been called to testify.[2] Additionally, Thomas was a co-defendant. On May 30, 2008, Thomas pled guilty to conspiring with West and others to distribute and possess with intent to distribute cocaine and cocaine base. *See* United States v. William Thomas, No. 4:07-CR-656 [Doc. # 196, pp. 9-10]. The rules of ethics precluded Mr. D'Agrosa from calling Thomas to give testimony that was contrary to the statements he made under oath in his guilty plea.

In his affidavit, Adrian West states that he saw unmarked vehicles parked outside West's home and that he saw people being brought out of the house in handcuffs. [Doc. # 1-2, p. 6]. Brown states in his affidavit that he was inside the home when the police made a forced entry. [Doc. # 1-2, p.8.]. Both claim that their observations were made before the search warrant was issued and executed, and both

---

[2]Thomas was a co-defendant. On May 30, 2008, Thomas pled guilty to conspiring with West and others to distribute and possess with intent to distribute cocaine and cocaine base. His affidavit is wholly inconsistent with the statements he made under oath in his guilty plea. *See* United States v. William Thomas, No. 4:07-CR-656-HEA (E.D.Mo.) [Doc. # 196, pp. 9-10]

state that they were "wiling (sic) and able to [testify] if requested." [Doc. #1-2, pp. 6,8]. The timing of the police officers' entry was disputed at the evidentiary hearing. Three of the defense witnesses at the suppression hearing gave testimony indicating that the police entered the house long before they had a warrant authorizing them to do so. Additional testimony from Brown and Adrian West to the same effect would have been cumulative at best. Also, their testimony would not have contradicted the government's evidence that Kimberly Brown allowed the officers to enter before the search warrant was issued.

In his affidavit, Mr. D'Agrosa states that because the witnesses were either targets of the investigation or potential subjects for prosecution, they could not be compelled to incriminate themselves. West does not dispute this, and nothing in the affidavits indicated that Brown and Adrian West were aware of the potential danger they faced by testifying. Even if West could somehow establish that D'Agrosa's conduct fell below an objective standard of reasonableness, he cannot establish prejudice. West does not show a reasonable probability that the ruling on the motion to suppress or the outcome of the trial would have been different if witnesses had testified.

West also claims that Mr. D'Agrosa failed to investigate his "potential alibi for the dates of the alleged [drug] deals." [Doc. # 1-1, p. 6.]. West does not state what alibi evidence was available and, according to the undisputed statement of Mr. D'Agrosa, he did not provide any alibi information to his attorney.

(b) Electronic surveillance

As part of its investigation, the government obtained evidence through judicially-authorized wiretaps. West filed a motion to suppress all electronic surveillance evidence, and a hearing on the motion was conducted at which Mr. D'Agrosa cross-examined the government's witnesses. West alleges that Mr. D'Agrosa's cross-examination was inadequate because none of the questions pertained to the "'necessity requirement' under 18 U.S.C. § 2518." [Doc. # 1-1, p. 5].[3] West does not identify additional questions should have been asked, nor does he point to testimony that could have been elicited that could have led to a different ruling on the motion to suppress. Indeed, West does not even contend here that the necessity requirement was not met.

West also complains that Mr. D'Agrosa did not investigate the government's expert witnesses or challenge the accuracy of their testimony. Again, West does not point to any specific information that would have been discovered through further investigation and he does not present any information that Mr. D'Agrosa could have used to discredit the expert witnesses. West has not demonstrated a reasonable probability that the outcome of the case would have been different but for counsel's acts or omissions.

### (c) Confidential informant

West's next claim is that Mr. D'Agrosa failed to conduct an adequate investigation of the government's informant and failed to "vigorously challenge the

---

[3] The "necessity requirement" is set forth in 18 U.S.C. Section 2518(1)( c), which provides that an application for an order authorizing electronic surveillance must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . "

informant's credibility." West does not identify any information that could have been discovered through a further background investigation of the informant. Also, his allegation that Mr. D'Agrosa did not mount a vigorous challenge to the informant's credibility is belied by the transcript of the cross-examination counsel conducted at trial. West has not shown a reasonably probability that additional investigation or cross-examination of the informant would have resulted in a different outcome. Thus, he has not established prejudice.

### (2) Failure to advise of benefits of pleading guilty

West claims that, had he been advised of the potential benefits of pleading guilty, he would not have gone to trial. He alleges that Mr. D'Agrosa did not provide him with information about the government's evidence or the sentencing procedure that would have enabled him to make an informed decision about whether to plead guilty or go to trial.

In his affidavit, Mr. Schwartz states that he relayed a plea offer from the government to West and tried to convince West to accept it. However, West remained intent on going to trial. [Doc. # 12-1]. In his reply memorandum, West states that he "does not recall any such plea offer," and he suggests that he wouldn't have accepted a plea offer before reviewing the discovery materials. [Doc. # 14, p. 8.]. West's failure to recall the plea offer does not contradict Mr. Schwartz's averment that one was made.

Mr. D'Agrosa states in his affidavit that he presented the "worst-case scenario" to West in reviewing the sentencing guidelines. Although he had learned from Mr. Schwartz that West had rejected a plea offer, he re-opened plea discussions with the

government's attorney. According to Mr. D'Agrosa, the government was insistent that Kimberly West (West's wife and co-defendant) also plead guilty, but that was a "deal breaker" for West. West denies that Mr. D'Agrosa reviewed the sentencing guidelines or discussed the option of pleading guilty with him.

The conflicting statements in the affidavits present an issue of credibility, which, for the following reasons, the Court resolves in favor of Mr. D'Agrosa. First, it is undisputed that Mr. D'Agrosa spoke with Mr. Schwartz about the government's plea offer and reopened plea negotiations after taking over the case. It would have been pointless to do this without relaying the information to his client. Second, Mr. D'Agrosa had no interest in withholding plea offers from West and "pressuring" him to go to trial. On the other hand, West maintained his innocence before trial and continues to do so today. Faced with a 400-month sentence of imprisonment, West has much greater incentive than Mr. D'Agrosa to re-write the history of this case.

### (3) Failure to properly litigate motions to suppress

In addition to the issues which the court has already addressed above, West complains that defense counsel should have filed objections to the magistrate judge's report and recommendation with respect to the motions to suppress. Because no objections were filed, the court of appeals did not review the factual findings of the report for clear error but, instead, reviewed the legal conclusions *de novo*. United States v. West, 589 F.3d at 938. West does not specify the objections that could have been made, nor does show a reasonable probability that the objections would have been sustained. Further, he does not show that the court of appeals would have reached a different conclusion had it conducted a *de novo* review of facts.

### (4) Failure to object to government's use of expert witnesses

West initially contends that the government did not give timely notice of its intention to present expert testimony. The record in this cases proves otherwise. [Doc. # 12-5]. Although the names of the witnesses at issue here (Agent Arnie Baratti and Agent Brandon Moles) were not contained in the government's notice, the substance of their testimony was clearly described. Mr. D'Agrosa cannot be faulted for not making an unsupportable objection.

Additionally, given the witnesses' training and experience and the subject matter of their testimony, West cannot show a reasonable probability that any challenge to the expert witnesses would have been successful.

Mr. D'Agrosa did not make a separate objection to an expert witness's interpretation of electronically-intercepted statements nor did he explicitly join in the one made by co-defendant's counsel. The objection was overruled and the testimony was allowed. West does not set forth the grounds on which Mr. D'Agrosa could have based an objection. Moreover, West makes no showing of a reasonable probability that the evidence would have been excluded if Mr. D'Agrosa had objected or joined in the co-defendant's objection.

### (5) Failure to challenge court's refusal to allow recordings to be re-played

During the trial, the court refused to allow counsel for the co-defendant to play a wiretap call that had already been played. West asserts that Mr. D'Agrosa should have contested this, but he does not identify the basis on which a challenge to the court's ruling could have been made. Further, in light of the discretion accorded to the

court in determining the manner of presenting evidence, West cannot show a reasonable probability that an objection would have been successful.

### (6) Failure to object to testimony about acquisition of wiretap authorization

West asserts that he was denied effective assistance of counsel as a result of Mr. D'Agrosa's failure to object to the testimony of Special Agent Baratti describing the procedures followed in obtaining the wiretap authorization. Citing to <u>United States v. Cunningham</u>, 462 F.3d 708 (7th Cir. 2006), West contends that the testimony was prejudicial.

In <u>Cunningham</u>, the court found that testimony concerning the procedures involved in obtaining the wiretaps was irrelevant, and that its "obvious purpose" was to inform the jury that "several senior government attorneys and agents" believed there was probable cause that the defendant was involved in criminal activity and to improperly "vouch[] for how good the evidence was." <u>Id</u>. at 713. In this case, Agent Baratti's testified about the administrative and judicial review process preceding the issuance of a wiretap authorization, and there is some similarity between his testimony and the testimony the court in <u>Cunningham</u> found objectionable. However, <u>Cunningham</u> was decided by the Seventh Circuit; it is not binding on courts in the Eighth Circuit and the Court has found no district or appellate court decision in the Eighth Circuit that has adopted the ruling in <u>Cunningham</u>. Mr. D'Agrosa cannot be faulted for failing to advocate a ruling that was not binding on the district court.

Furthermore, at least one other circuit has reached a conclusion contrary to that of the <u>Cunningham</u> court. In <u>United States v. Miller</u>, 738 F3d 361 (C.A.D.C. 2013), the appellants argued that FBI agents' trial "testimony about procedures for obtaining

search warrants and wiretaps . . . 'crossed the line by advancing the argument that multiple layers of court and prosecutor review served [as] and independent approval of the agents' conclusions of illegality.'" Id. at 371. In rejecting the appellants' argument, the court wrote:

> Although the "layering" testimony about multiple levels of approval can be overdone in a manner that would substantiate [appellants'] concern, *see United States v. Cunningham*, 462 F.3d 708, 712-15 (7th Cir. 2006), they raised no objection in the district court. Upon plain error review . . . we conclude that this testimony by [the FBI agents] was not so extreme as to suggest, in the absence of a limiting instruction, that the suspicions of the investigators about the defendants were confirmed because the applications were subject to multiple layers of review; rather, the agents addressed the lawfulness of investigative conduct, which was not the same as evidence of a defendant's guilt.

Id. (citations omitted).

Finally, while the Cunningham court found that the testimony was not relevant, it is arguable that the same finding could not be made in this case. At trial, the government's evidence was that co-defendant Kimberly West allowed police officers to enter her home and consented to their request to search it before they obtained the search warrant. In contrast, Ms. West testified that the officers forced entry into the house and threatened to shoot her. According to her testimony, these events occurred several hours before the search warrant was issued. Thus, the legality of the conduct of the law enforcement officers and their credibility were placed in issue by Ms. West's testimony. Testimony designed to show that the officers adhered to the legal procedures for obtaining a wiretap was relevant to these issues raised by the defense.

### (7) Failure to request jury instructions

West concedes that he cannot identify a jury instruction that he believes Mr. D'Agrosa should have requested and, thus, he has no factual support for this claim. Nevertheless, West asserts that D'Agrosa was deficient in failing to challenge the trial court's rejection of a "buyer-seller" instruction on appeal. West does not provide any basis for this bare assertion, and he has not shown a reasonable probability that the outcome of the appeal would have been different.

### (8) Failure to object to prosecutor's closing argument

West has not pointed to any objectionable statement made by the government's attorney in closing argument, and he concedes that he is unable to do so. Thus, he is not entitled to relief on this claim.

### (9) Interference with right to testify

At the conclusion of the evidence, West stated under oath that he knew he had the right to testify and to present evidence in his defense, that no one had made any promises or threats to influence his decision not to testify, that he agreed with Mr. D'Agrosa's advice that he not testify, and that the decision not to testify was his and his alone. United States v. Avery West, No. 4:07-CR-656-HEA (E.D.Mo.) [Doc. # 430, pp. 95-97]. The record of the colloquy belies West's claim that Mr. D'Agrosa interfered with his right to testify.

### (10) Failure to object to presentence report

West first argues that Mr. D'Agrosa should have objected to the drug quantity calculation contained in the presentence report. The jury made a special finding, beyond a reasonable doubt, that West was guilty of conspiring to distribute and to

possess with intent to distribute more than five kilograms of cocaine and more than 50 grams of cocaine base. Additionally, the drug quantity cited in the presentence report was supported by the evidence adduced at trial. West has not specified any objection that Mr. D'Agrosa could have made with respect to the drug quantity nor does he show a reasonable probability that any such objection would have been successful.

West next asserts that Mr. D'Agrosa should have filed a written motion for downward departure based on overstated criminal history, pursuant to U.S.S.G. § 4A1.3. It is undisputed that Mr. D'Agrosa argued this point at sentencing, but the trial court denied the departure request. The trial court did not require Mr. D'Agrosa to file a written motion or objection as a prerequisite to ruling on his request for a downward departure. Further, no written motion was required to preserve the issue for appeal. Again, West has not shown a reasonable probability that he would have received a lower sentence but for Mr. D'Agrosa's omissions.

### B. Ground Two: Ineffective Assistance on Appeal

West's claim of ineffective assistance of counsel on appeal is based on the allegations he makes in support of the claims addressed above. The Court has already determined that the claims lack merit, either because they are not supported by any facts or because they are inconsistent with the law. Certainly, defense counsel cannot be faulted for failing to present non-meritorious claims on appeal. Further, West has not shown a reasonable probability that the result of his appeal would have been different if any of these issues had been raised.

III. Conclusion

For the foregoing reasons, the court concludes that motion and the files and records of this case show that West is not entitled to relief under 28 U.S.C. § 2255 based on any of the claims he asserts in the motion to vacate. Therefore, the motion will be denied without a hearing. See Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). Additionally, the court finds that West has not made a substantial showing of the denial of a constitutional right. Therefore, the court will not issue a certificate of appealability. See 28 U.S.C. § 2253.

An order denying the motion will be separately filed.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2014.